## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE RULE 45 SUBPOENA TO<br>ROBERT VITO<br>c/o Office of Inspector General<br>330 Independence Ave, SW<br>Washington, DC 20201 | : | |
| | : | |
| | : | |
| In the matter of | : | |
| | : | |
| UNITED STATES OF AMERICA EX REL.<br>ANTHONY R. SPAY,<br>c/o Marc S. Raspanti, Esq.<br>Pietragallo, Gordon, Alfano, Bosick &<br>Raspanti, LLP<br>1818 Market Street, Suite 3402<br>Philadelphia, PA 19103 | : | MISC. No.: _____ |
| | : | [Underlying civil action pending in the Eastern<br>District of Pennsylvania, Case No. 09-4672] |
| | : | **Expedited Hearing Requested** |
| Plaintiff, | : | |
| vs. | : | |
| CVS CAREMARK CORPORATION;<br>CAREMARK Rx, LLC (f/k/a CAREMARK Rx,<br>INC.); CAREMARK, LLC (f/k/a CAREMARK,<br>INC.); SILVERSCRIPT, LLC (f/k/a<br>SILVERSCRIPT, INC.),<br>One CVS Dr.<br>Woonsocket, RI 02895 | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## EMERGENCY MOTION TO COMPEL THE DEPOSITION OF ROBERT VITO

Enu A. Mainigi (D.C. Bar No. 454012)
Grant A. Geyerman (D.C. Bar No. 502051)

Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: 202-434-5000
Fax: 202-434-5029
emainigi@wc.com
ggeyerman@wc.com

*ATTORNEYS FOR DEFENDANTS CVS
CAREMARK CORPORATION; CAREMARK RX,
LLC; CAREMARK, LLC; AND SILVERSCRIPT,
LLC*

## TABLE OF CONTENTS

I.     INTRODUCTION................................................................................................1

II.    FACTUAL BACKGROUND..............................................................................2

III.   ARGUMENT......................................................................................................5

       A.     Mr. Vito's testimony is highly relevant................................................5

       B.     Mr. Vito's testimony is not unreasonably cumulative or duplicative.....................7

       C.     Defendants cannot obtain the substance of Mr. Vito's testimony from
              another source.........................................................................................7

       D.     Mr. Vito's deposition will not significantly burden OIG .......................7

IV.    CONCLUSION ...................................................................................................8

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Apollo Grp., Inc.*, No. 06-588 (CKK), 2007 WL 778653 (D.D.C. March 12, 2007) (unpublished) ...................................................................................................1

*In re Denture Cream Prods. Liability Litig.*, 292 F.R.D. 120 (D.D.C. 2013) ............................5, 7

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS (D. Mass. 2007) ...................................................................................8

*Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16 (D.D.C. 2013) ...................................................5

*United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125 (E.D. Pa. 2012) ...................................................................................................................3, 6

*Watts v. S.E.C.*, 482 F.3d 501 (D.C. Cir. 2007)...............................................................................5

### OTHER AUTHORITIES

45 C.F.R. § 2.1 *et seq.* ....................................................................................................................1

5 U.S.C. § 301 ...................................................................................................................................1

Fed. R. Civ. P. 45(d)(1).....................................................................................................................5

Fed. R. Civ. P. 12(b)(6).....................................................................................................................6

Fed. R. Civ. P. 45 ..............................................................................................................................5

**INTRODUCTION**

On June 30, 2014, Defendants CVS Caremark Corporation; Caremark Rx, LLC; Caremark, LLC; and SilverScript, LLC (collectively, "Defendants") served a subpoena for deposition on Robert Vito (the "Subpoena"), the Regional Inspector General for the Office of Evaluation and Inspections of the Office of the Inspector General ("OIG") for the United States Department of Health and Human Services (the "Department"). Pursuant to the Department's *Touhy* regulations,[1] Defendants concurrently served OIG with a request for authorization to depose Mr. Vito (the "*Touhy* Request").

Defendants narrowly tailored the Subpoena and *Touhy* Request to obtain important evidence in the underlying case—a *qui tam* action alleging healthcare fraud in which the Government has declined to intervene—without imposing any unnecessary burden on Mr. Vito or on OIG. Specifically, Defendants requested Mr. Vito's deposition regarding his personal involvement with three OIG reports published in 2010 and 2011 regarding the Medicare Part D Program in 2006 and 2007. Information contained in, and related to, those reports could severely undermine two of Relator's three principal claims of wrongdoing, if not dispose of them entirely.

On October 2, 2014, more than three months after Defendants served the request, OIG denied Mr. Vito authorization to testify. In denying the request, OIG contended that (i) the information Defendants seek through deposition is evident in both the OIG reports themselves and Mr. Vito's Congressional testimony related to one or more of the reports; and (ii) preparing Mr. Vito to testify burdens OIG's limited resources. Certification of Grant A. Geyerman

---

[1] *Touhy* regulations are procedures issued by federal agencies pursuant to 5 U.S.C. § 301 that govern requests for authorization for testimony from current and former agency employees. *In re Apollo Grp., Inc.*, No. 06-588 (CKK), 2007 WL 778653, at *5 (D.D.C. March 12, 2007) (unpublished). The Department's *Touhy* regulations are available at 45 C.F.R. § 2.1 *et seq.*

("Geyerman Cert."), Ex. 3. These contentions are unpersuasive, and they certainly do not outweigh Defendants' strong interest in obtaining the requested evidence in this first-of-its-kind *qui tam* case alleging fraud under the Medicare Part D law. Consequently, Defendants respectfully move this Court to compel Mr. Vito's appearance for deposition, on or before October 31, 2014, at the law offices of Williams & Connolly LLP, 725 Twelfth St., N.W., Washington, D.C. 20005, or at another location of Mr. Vito's choosing in Washington.

## FACTUAL BACKGROUND

The underlying action is a False Claims Act ("FCA") case in which the Government has declined to intervene. Geyerman Cert. ¶ 5. It is the first *qui tam* action related to the Medicare Part D Program claiming that certain prescription drug information (*i.e.*, so-called "default" or "dummy" prescriber identifiers) is "false" for FCA purposes and that Defendants' alleged failure to block Part D beneficiaries' access to certain prescription medicines (*e.g.*, drugs with an "obsolete" National Drug Code number) rendered the services the Government paid for under the Part D Program "worthless." Geyerman Cert. ¶¶ 3–4. Defendant SilverScript, LLC provides pharmacy benefit management ("PBM") services to private health insurance companies offering Part D prescription drug insurance coverage to beneficiaries.[2] Geyerman Cert. ¶ 7. The Relator, Anthony Spay, is a former contingency pharmacy claims auditor alleging that Defendants defrauded the Centers for Medicare and Medicaid Services ("CMS") during 2006 and 2007, the first two years of the Medicare Part D Program. Geyerman Cert. ¶ 8.

Relator alleges three principal theories of fraud, two of which are relevant to the instant Subpoena. First, Relator alleges that Defendants defrauded CMS by submitting certain Prescription Drug Event ("PDE") records to CMS with a placeholder value in 1 of the PDE

---

[2] The other Defendants are corporate affiliates of SilverScript, LLC.

record's 37 data fields, the prescriber identifier field, rather than the unique identification

number associated with the prescribing physician issued by the DEA, a state licensing board, or

CMS. In 2010 and 2011, under Mr. Vito's direction, HHS OIG investigated and published two

reports regarding the wide-spread industry practice in 2006 and 2007 of using these so-called

"dummy" or "default" prescriber identification numbers (*e.g.*, AA0000000, AA1111119) to fill a

data field that was not permitted to be left blank. Geyerman Cert., Exs. 4–5. Both prescriber

identification reports, as well as Mr. Vito's subsequent Congressional testimony, allude to the

circumstances that made it virtually inevitable that pharmacists, Part D plan sponsors, and PBMs

would resort to using dummy numbers in 2006 and 2007 in certain circumstances, as well as

CMS's expectation that beneficiaries not be deprived of their medically necessary prescriptions

just because a pharmacist was missing a unique identification number at the point-of-sale.

Second, Relator alleges that Defendants, for FCA purposes, deprived CMS of *any* value

for the services the Government pays for under the Part D Program by allowing pharmacies to

dispense medicines associated with "obsolete" or "inactive" National Drug Codes ("NDC"). An

obsolete or inactive NDC number does *not* signify that a drug is past its shelf-life expiration,

although that misconception underlies Relator's theory. In 2010, OIG, again under Mr. Vito's

direction, investigated how frequently "terminated" drugs were dispensed under the Part D

Program in 2006 and 2007. Geyerman Cert., Ex. 6.

In 2012, Defendants moved to dismiss these claims (as well as Relator's other, subsidiary

claims). In denying Defendants' motion to dismiss, the court concluded that discovery was

necessary to evaluate evidence outside the pleadings that appeared supportive of Defendants'

arguments. *United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 156–57

(E.D. Pa. 2012). Since then, the parties have engaged in extensive fact discovery. The

Government, a real party in interest, has been an especially important source of discovery in this case, as Relator alleges that Defendants defrauded CMS. Geyerman Cert. ¶¶ 3–4. In fact, in recognition of the importance of that discovery, the court has allowed fact discovery from the Government to continue three months longer than fact discovery from other sources (*i.e.*, until October 31, 2014), including the deposition of Mr. Vito specifically. *United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, slip op. at 1 n.1 (E.D. Pa. July 9, 2014) (extending fact discovery until October 31, 2014 because the Government is "a crucial source of information in this case"); *United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, slip op. at 1 n.3 (E.D. Pa. July 29, 2014) (clarifying that the extended fact discovery deadline only applies to discovery from the Government).

On June 30, 2014, Defendants served OIG with the aforementioned Subpoena and *Touhy* Request for Mr. Vito's deposition. Geyerman Cert. Ex. 1–2. Specifically, Defendants requested Mr. Vito's deposition concerning the three OIG reports discussed above:

- Invalid Prescriber Identifiers on Medicare Part D Drug Claims (June 2010) (OEI-03-09-00140);

- Oversight of the Prescriber Identifier Field in Prescription Drug Event Data for Schedule II Drugs (February 2011) (A-14-09-003202); and

- Review of Terminated Drugs (Nov. 2010) (A-07-09-03130).

Mr. Vito's name appears as OIG's point-of-contact on two of these reports, Geyerman Cert. Exs. 5–6; and the third report "was prepared under the direction" of Mr. Vito, Geyerman Cert. Ex 4.

On October 2, 2014, more than three months after Defendants requested the deposition and less than a month before the October 31 deadline, OIG denied Defendants' *Touhy* Request. Geyerman Cert. Ex. 3. In its written response, OIG asserted that: (i) the information Defendants seek from Mr. Vito is evident from the publically available OIG reports and Congressional

testimony; and (ii) preparing and presenting Mr. Vito would tax OIG's limited resources. *Id.* OIG did not assert that the requested testimony was irrelevant to the underlying action or that the deposition posed any risk to any OIG privilege.

To date, Mr. Vito's deposition is the only testimony requested from an OIG witness.

## ARGUMENT

In this Circuit, "[d]isputes over third-party subpoenas to agencies in civil litigation . . . must commence in the district court under Rule 45." *Watts v. S.E.C.*, 482 F.3d 501, 503 (D.C. Cir. 2007). Under Rule 45, the Court will not enforce discovery requests that impose "undue burden or expense." Fed. R. Civ. P. 45(d)(1); *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013). Whether a discovery request imposes an undue burden depends on a number of factors, including: whether the discovery is unreasonably cumulative or duplicative; whether discovery is obtainable from a more convenient or less burdensome source; and whether the burden of discovery outweighs its benefit, considering the needs of the case and the importance of the proposed discovery. *Id.* (quoting *In re Denture Cream Prods. Liability Litig.*, 292 F.R.D. 120, 120 (D.D.C. 2013)). These factors weigh heavily in favor of enforcing the Subpoena and support Defendants' Motion.

*First*, Mr. Vito's testimony is highly relevant to two of Relator's three major theories of fraud. Tellingly, OIG does not dispute the relevance of Mr. Vito's testimony. Geyerman Cert., Ex. 3. Defendants would question Mr. Vito about the three OIG reports, which reflect potentially dispositive rebuttals to Relator's prescriber identification and obsolete NDC theories of fraud.

For example, the two OIG reports concerning prescriber identifiers speak directly to whether the practice of using dummy prescriber identifiers should be considered "false" for

purposes of federal law. They help to establish how (1) in 2006 and 2007, there was no universal form of prescriber identifier around which Defendants (or anyone) could have designed an automated claims adjudication system to screen for dummy identifiers submitted by pharmacies; (2) CMS instructed healthcare companies during those years not to erect procedures denying beneficiaries their medicines; (3) this access-to-care instruction superseded obtaining a prescribing physician's unique identification number at the pharmacy counter, including for the most serious types of prescriptions (*i.e.*, Schedule II drugs); and (4) as a result of these circumstances, resorting to dummy identifiers to enable a prescription transaction to process was widespread, open, and conspicuous industry practice known to CMS.

Likewise, the OIG report regarding "Terminated Drugs" seemingly utilized a particular data value, the HCFA "termination date," that is fundamental to Relator's expired NDC theory. In comments to the report, CMS advised OIG that the HCFA termination date "is likely flawed" and "cannot be relied upon as a proxy for identifying the outdated products." Geyerman Cert., Ex. 6. At deposition, among other things, Defendants will ask Mr. Vito to confirm whether OIG used the HCFA termination date and to explain his understanding of CMS's comments and OIG's response, thereto.

Notably, in their Rule 12(b)(6) Motion, Defendants cited the OIG reports. Geyerman Cert. ¶ 9. In denying Defendants' Motion, the district court deferred consideration of their substance until after discovery. The court did, however, recognize their potential importance after the close of discovery. *Spay*, 913 F. Supp. 2d at 156 (acknowledging that statements in the OIG reports "are perhaps indicative that either (1) Defendants did not intentionally submit false claims that were not condoned by CMS or (2) CMS may not deem PDEs with incorrect prescriber identifiers false for purposes of the FCA."). Ultimately, the court reasoned that "such

findings are improper" on a motion to dismiss and "remain[] a matter for discovery." *Id.* at 157. Discovery is precisely what Defendants seek through Mr. Vito's deposition.

*Second*, Mr. Vito's testimony is not unreasonably cumulative or duplicative. Mr. Vito had personal involvement in preparing the three OIG reports; no other witness in the case can say the same. Geyerman Cert., Exs. 4–6. The parties have not requested a deposition from any other OIG witness. Thus, Mr. Vito's testimony will supply a unique perspective and help Defendants establish a comprehensive record on two core issues in the case.

*Third*, Defendants cannot obtain the substance of Mr. Vito's testimony from another source. Without any analysis, OIG asserts to the contrary. Geyerman Cert., Ex. 3. At bottom, OIG presumes that because the OIG Reports themselves are public documents, as is Mr. Vito's Congressional testimony, a deposition is not necessary. But obviously witness testimony is an essential device for amplifying and interpreting the written word. For example, the three OIG reports are summary documents representing OIG's "final work product." During deposition, Defendants would ask Mr. Vito to expand on statements contained in the reports and provide details and clarification that about OIG's written statements. Likewise, just because Mr. Vito testified before Congress does not mean that the transcripts can answer all of Defendants' questions. The previous hearings reflect Congress exercising oversight of the Part D program; in contrast, Defendants' questions will analyze the reports from the perspective of a party defending an FCA action.

*Fourth*, contrary to OIG's assertion, Mr. Vito's deposition will not significantly burden OIG. Geyerman Cert., Ex. 3; *In re Denture Cream Prods.*, 292 F.R.D. at 123 (burden must be balanced against, *inter alia*, "the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues"). In fact, the burden should be

7

minimal.   The deposition will focus on three OIG reports, some of which Mr. Vito has testified about before.   Thus, in comparison to other witnesses in the case, Mr. Vito's deposition should require far less preparation (if he chooses to prepare at all).   Moreover, given the October 31 deadline, this matter should not extend beyond the next 12 days, which necessarily limits the burden to OIG.   Furthermore, OIG has authorized Mr. Vito's testimony in other cases under far more resource-intensive circumstances.   For example, in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS (D. Mass. 2007), OIG permitted Mr. Vito to travel outside of Washington, D.C. to provide six full days of deposition testimony.   Declaration of Paul Dueffert, Esq. ¶ 4.   In this case, Defendants request far less of Mr. Vito and of OIG.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Emergency Motion to Compel the Deposition of Robert Vito.   The Court should order the deposition to occur on or before October 31, 2014.

Dated:  October 21, 2014

Respectfully submitted,

Enu A. Mainigi (D.C. Bar No. 454012)
emainigi@wc.com
Grant A. Geyerman (D.C. Bar No. 502051)
ggeyerman@wc.com

Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: 202-434-5000
Fax: 202-434-5029

*ATTORNEYS FOR DEFENDANTS CVS
CAREMARK CORPORATION; CAREMARK
RX, LLC; CAREMARK, LLC; AND
SILVERSCRIPT, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that copies of the forgoing **Memorandum of Law in Support of Defendants' Emergency Motion to Compel the Deposition of Robert Vito** were filed with the Court and served upon all counsel in the underlying civil action via electronic mail:

Paul A. Traina, Esquire
Engstrom Lipscomb & Lack
10100 Santa Monica Blvd 12th Floor
Los Angeles, CA 90067-4113

Pamela Coyle Brecht, Esquire
Michael A. Morse, Esquire
M. Mitchell Oates, Esquire
Marc S. Raspanti, Esquire
Pietragallo Gordon Alfano Bosick & Raspanti LLP
1818 Market St Suite 3402
Philadelphia, PA 19103

Michael I. Leonard, Esquire
Leonard Law Offices
203 N Lasalle St Suite 1620
Chicago, IL 60601

Thomas F. Johnson, Esquire
US Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Joshua Weiss

10